Bus Air, LLC,

　　　　　*Plaintiff*

v.

Anthony R. Woods and E3Rivers, LLC f/k/a Bus Air Manufacturing, LLC,

　　　　　*Defendants*

Case No. 19-cv-01435-RGA-CJB

## Defendants' Answer and Defenses to Plaintiff's Amended Complaint and Counterclaim

Defendants Anthony R. Woods ("Woods") and E3Rivers, LLC f/k/a Bus Air Manufacturing, LLC ("E3Rivers") file this Answer, Affirmative Defenses, and Counterclaim in response to Plaintiff Bus Air, LLC's ("Bus Air") Amended Complaint [D.I. 77] (the "Amended Complaint"), and show the following:

## ANSWER

### Introduction

1.　　　Defendants admit Bus Air's Amended Complaint purports to state an action for the claims described in paragraph 1 and admit the Asset Purchase Agreement ("APA") was entered into by Bus Air and Defendants effective September 25, 2017. Defendants otherwise deny the allegations in paragraph 1.

2.　　　Denied.

### Parties

3.     On information and belief, Defendants admit Bus Air is a limited liability company organized and existing under the laws of Delaware. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 3, and therefore deny those allegations.

4.     Defendants admit Woods resides in Decatur, Texas, and is E3Rivers' sole member. Defendants are without knowledge or information sufficient to form a belief about the truth of whether the entities listed in paragraph 4 account for over 90% of Bus Air's present business, and therefore deny those allegations. Except as expressly admitted, denied.

5.     Defendants admit Woods is the sole and managing member of 6630 East Hwy 114, LLC, which owns certain property located at 6630 East Highway 114, Rhome, Texas 76078 and leases that property to Bus Air. Defendants admit Woods is the sole and managing member of 1641 East Pine, LLC, which owns certain property located at 1641 East Pine Street, Tulsa, Oklahoma 74103 and leases that property to Bus Air. Defendants admit Woods is the sole and managing member of Building 380, LLC ("Building 380"). Except as expressly admitted, denied.

6.     Defendants admit E3Rivers is a limited liability company organized and existing under the laws of Texas and that Woods is and has been its sole and managing member at all times relevant to this lawsuit. Except as expressly admitted, denied.

## Jurisdiction and Venue

7.     Defendants admit the allegations in paragraph 7 purport to quote and summarize § 10 of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Defendants admit a purported copy of the APA is attached as Exhibit 1 to the Amended

Complaint. Paragraph 7 also contains legal conclusions to which a response is not required. Except as expressly admitted, denied.

8.     Defendants admit a purported copy of the Escrow Agreement is attached as Exhibit 2 to the Amended Complaint. Paragraph 8 contains legal conclusions to which a response is not required.

9.     Paragraph 9 contains legal conclusions to which a response is not required.

## Factual Background

10.     Defendants admit the allegations in paragraph 10 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Except as expressly admitted, denied.

11.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11, and therefore deny those allegations.

12.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12, and therefore deny those allegations.

13.     Defendants admit the allegations in paragraph 13 purported to summarize the negotiations between them and Plaintiff Bus Air and the execution of the APA on September 25, 2017. Defendants admit they were represented by counsel during due diligence, negotiations, and at closing of the APA. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations related to Bus Air's representation, and therefore deny those allegations. Except as expressly admitted, denied.

14.     Defendants admit the allegations in paragraph 14 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or

incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Except as expressly admitted, denied.

15.     Defendants admit the allegations in paragraph 15 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Except as expressly admitted, denied.

16.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16, and therefore deny those allegations.

17.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17, and therefore deny those allegations.

18.     Defendants admit the allegations in paragraph 18 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 18, and therefore deny those allegations. Paragraph 18 contains legal conclusions to which a response is not required. Except as expressly admitted, denied.

19.     Defendants admit the allegations in paragraph 19 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Except as expressly admitted, denied.

20.     Defendants admit the allegations in paragraph 20 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Except as expressly admitted, denied.

21.     Defendants admit the allegations in paragraph 21 purport to quote and summarize certain provisions of the APA but deny those allegations to the extent they inaccurately or incompletely characterize the APA. Defendants refer the Court to the APA for a complete and accurate statement of its terms. Except as expressly admitted, denied.

22.     Defendants deny Bus Air paid them $18,190,000 in cash consideration at closing. Defendants deny the remaining allegations in paragraph 22.

23.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23, and therefore deny those allegations. Defendants deny the remaining allegations in paragraph 23.

24.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations related to Bus Air's purported determination of Defendants' actions as described in paragraph 24 and therefore deny those allegations. Defendants deny the remaining allegations in paragraph 24.

25.     Defendants admit a purported copy of email correspondence dated September 12, 2017, is attached as Exhibit 3 to the Amended Complaint. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations related to Bus Air's purported determination of Defendants' actions as described in paragraph 25, and therefore deny the allegations. Defendants deny the remaining allegations in paragraph 25.

26.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations related to Bus Air's communication with the Escrow Agent as described in paragraph 26. Defendants deny the remaining allegations in paragraph 26.

27.     Defendants admit the parties exchanged information related to Bus Air's claims and disputes as referenced in paragraph 27. Defendants admit the parties participated in numerous telephone calls to discuss said information and positions as referenced in paragraph 27. Defendants deny Bus Air supplied significant and substantive data concerning its claims and disputes as referenced in paragraph 27. Except as expressly admitted, denied.

28.     Defendants admit William Karol, for Bus Air, contacted Mr. Woods on or about December 23, 2018, to inquire if Defendants would meet concerning the purported issues as referenced in paragraph 28. Except as expressly admitted, denied.

29.     Admit.

30.     Defendants admit a purported copy of email correspondence from William Karol to Woods dated February 6, 2019, is attached as Exhibit 4 to the Amended Complaint.  Except as expressly admitted, denied.

31.     Defendants admit Woods, Cory Strange, Casey Griffith, and representatives of Bus Air met at Defendants' accountants' office on February 7, 2019, as described in paragraph 31. Except as expressly admitted, denied.

32.     Defendants admit to seeking to recover the full amount of the Holdback Amount as referenced in paragraph 32. Defendants are without knowledge or information sufficient to form a belief about the truth of what Bus Air sought from the February 7, 2019 meeting as referenced in paragraph 32, and therefore deny the allegations. Except as expressly admitted, denied.

33. Defendants admit the February 7, 2019 meeting lasted approximately three-and-one-half to four hours. Defendants deny the remaining allegations in paragraph 33.

34. Denied.

35. Denied.

36. Defendants admit a purported copy of the Direction Letter is attached as Exhibit 5 to the Amended Complaint. Defendants deny the remaining allegations in paragraph 36.

37. Defendants are without knowledge or information sufficient to form a belief about the truth of whether Bus Air relied on Defendants' purported representations as referenced in paragraph 37, and therefore deny those allegations.

38. Defendants are without knowledge or information sufficient to form a belief about what actions Bus Air would or would not have taken but for Defendants' purported representations as referenced in paragraph 38, and therefore deny those allegations.

39. Defendants admit William Karol informed Mr. Woods Defendants were unlikely to receive an Earnout Payment. Except as expressly admitted, denied.

40. Denied.

41. Denied.

42. Defendants admit a purported copy of email correspondence dated May 22, 2019, from William Carol to Cory Strange is attached as Exhibit 6 to the Amended Complaint. Defendants admit Bus Air arranged for a telephone call between its accountants and the Defendants' accountant to occur on May 21, 2019. Defendants are without knowledge or information sufficient to form a belief about the truth of whether Cory Strange elected not to participate in the telephone

call as referenced in paragraph 42, and therefore deny the allegations. Except as expressly admitted, denied.

43. Denied.

44. Defendants admit to not making a reference to any disagreement related to the Earnout Amount in the Texas Action or prior to filing the Counterclaims in the present action.

45. Defendants are without knowledge or information sufficient to form a belief about whether Bus Air relied on Defendants' purported silence concerning the Earnout Amount as described in paragraph 45, and therefore deny those allegations.

46. Denied.

47. Denied. Defendants further object to Bus Air's use of the full name of a minor in this filing in violation of Rule 5.2. Defendants demand that Bus Air re-file all documents using the minor's full name and list only the minor's initials pursuant to Rule 5.2.

48. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegation regarding what an unnamed "industry service person" said to Bus Air, and therefore deny those allegations. Defendants deny the remaining allegations in paragraph 48.

49. Denied.

50. Defendants admit Adam Whitton and Chad Whitton are Woods' nephews.

51. Defendants admit the allegations in paragraph 51.

52. Defendants admit Adam Whitton, Chad Whitton, and Woods became employees of Bus Air after closing. Except as expressly admitted, denied.

53. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53, and therefore deny those allegations.

54.     Defendants admit E3Rivers paid Chad Whitton $1,000,000 and Adam Whitton $465,000 after closing. Defendants admit Exhibit 7 to the Amended Complaint purports to be an email from Woods to Chad Whitton dated December 12, 2017. Except as expressly admitted, denied.

55.     Defendants admit, on information and belief, Chad and Adam Whitton worked in the roofing industry following their employment with Bus Air. Except as expressly admitted, denied.

56.     Denied.

57.     Defendants admit the certificate of formation for Building 380 was filed with the Texas Secretary of State on or about September 19, 2018, and that Woods is its sole member. Except as expressly admitted, denied.

58.     Denied.

59.     Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations regarding the formation of WW Sales, LLC ("WW Sales"), and therefore deny those allegations. Defendants deny the remaining allegations in paragraph 59.

60.     Defendants admit Building 380 purchased real property in Decatur, Texas, on or around November 16, 2018. Except as expressly admitted, denied.

61.     Denied.

62.     Denied.

63.     Defendants admit Building 380 agreed to lease real property to WW Sales. Except as expressly admitted, denied.

64.     Denied.

65.     Defendants are without knowledge or sufficient information to forma a belief about the truth of the allegations in paragraph 65, and therefore deny those allegations.

66.     Denied.

67.     Denied.

68.     Defendants deny they directed Chad Whitton, Adam Whitton, or WW Sales to take any of the actions alleged in paragraph 68 or that those actions were taken "for" Defendants. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 68, including whether the actions alleged were taken, and therefore deny those allegations.

69.     Defendants deny they directed Chad Whitton, Adam Whitton, or WW Sales to take any of the actions alleged in paragraph 69 or that those actions were taken "for" Defendants. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 69, including whether the actions alleged were taken, and therefore deny those allegations.

70.     Defendants deny they directed Chad Whitton or Adam Whitton to take any of the actions alleged in paragraph 70 or that those actions were taken "for" Defendants. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 70, including whether the actions alleged were taken, and therefore deny those allegations.

71.     Denied.

72.     Denied.

73.     Denied.

74. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 74, and therefore deny those allegations.

75. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 75, and therefore deny those allegations.

76. Denied.

77. Denied.

78. Denied.

79. Defendants admit Bus Air sent a cease and desist letter dated June 5, 2019, to E3Rivers, WW Sales, Building 380, Chad Whitton, and Adam Whitton. Except as expressly admitted, denied.

80. Defendants admit the letter referenced in paragraph 80 demanded the recipients provide numerous items to Bus Air by June 12, 2019. Except as expressly admitted, denied.

81. Defendants admit WW Sales, Chad Whitton, and Adam Whitton filed a petition against Bus Air in the 271st District Court, Wise County, Texas on June 11, 2019, and E3Rivers, Building 380, and Woods filed a petition in intervention in that action on June 12, 2019. Except as expressly admitted, denied.

82. Denied.

83. Denied.

84. Denied.

85. Defendants admit Bus Air moved to strike the petition in intervention referenced in paragraph 85. Except as expressly admitted, denied.

86. Defendants admit Bus Air moved to abate or stay the action referenced in paragraph 86. Except as expressly admitted, denied.

87. Denied.

## Reservation of Rights

88. Defendants deny the allegations in paragraph 88 that they have engaged in "extensive and well-organized efforts to conceal relevant conduct and information." To the extent a response to the remainder of paragraph 88 is required, denied.

## Causes of Action

### Count 1- Breach of the APA

89. Defendants incorporate by reference their responses to the preceding paragraphs of the Amended Complaint.

90. Denied.

91. Denied.

92. Denied.

### Count 2 – Breach of Restrictive Covenants

93. Defendants incorporate by reference their responses to the preceding paragraphs of the Amended Complaint.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

### Count 3 - Indemnification

99.     Defendants incorporate by reference their responses to the preceding paragraphs of the Amended Complaint.

100.    Denied.

101.    Denied.

102.    Denied.

## Prayer for Relief

Defendants deny that Bus Air is entitled to any relief, including the relief requested in its Prayer for Relief.

## DEFENSES

Defendants assert the following affirmative and other defenses in response to the allegations in the Amended Complaint:

## First Defense

Bus Air's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## Second Defense

Bus Air's claims are barred, in whole or in part, because Bus Air materially breached the APA.

## Third Defense

Bus Air's claims are barred, in whole or in part, because Bus Air repudiated the APA.

## Fourth Defense

Bus Air's claims are barred, in whole or in part, because Bus Air has unclean hands.

## Fifth Defense

Bus Air's claims are barred, in whole or in part, because the noncompetition and nonsolicitation provision of the APA is an unenforceable agreement in restraint of trade, including under TEX. BUS. & COM. CODE § 15.50, and it is void as against public policy.

### Sixth Defense

Bus Air's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

### Seventh Defense

Bus Air's claims are barred, in whole or in part, by the doctrine of promissory estoppel.

### Eighth Defense

Bus Air's claims are barred, in whole or in part, by the doctrine of waiver.

### Ninth Defense

Bus Air's claims are barred, in whole or in part, because Bus Air has suffered no damages.

### Tenth Defense

Bus Air's claims are barred, in whole or in part, because Defendants are not the proximate cause of the alleged damages.

### Eleventh Defense

Bus Air's claims are barred, in whole or in part, by Bus Air's failure to mitigate its alleged damages.

### Twelfth Defense

Bus Air's claims are barred, in whole or in part, by the doctrine of setoff.

### Thirteenth Defense

Bus Air's claims are barred, in whole or in part, because Defendants are not subject to personal jurisdiction in this district.

### Fourteenth Defense

Bus Air's claims are barred, in whole or in part, because venue in this district is improper.

### Fifteenth Defense

Bus Air's claims are barred, in whole or in part, because indispensable parties are not joined to this suit.

## COUNTERCLAIM

Counterclaimants Anthony R. Woods ("Woods") and E3Rivers, LLC f/k/a Bus Air Manufacturing, LLC ("E3Rivers") (collectively, the "Woods Parties") file this Counterclaim against Bus Air, LLC ("Bus Air") for breaches of the APA, breaches of the implied duty of good faith and fair dealing, declaratory judgment, and indemnification. The Woods Parties allege the following in support:

### Parties

1.      Anthony R. Woods is an individual residing in Wise County, Texas.

2.      E3Rivers, LLC f/k/a Bus Air Manufacturing, LLC is a Texas limited liability company with its principal place of business located in Wise County, Texas. Woods is the sole member of E3Rivers.

3.       Bus Air, LLC is a Delaware limited liability company doing business in Texas. Bus Air's sole member is ProAir Holdings Corporation ("ProAir"), a Delaware corporation that, on information and belief, has a principal place of business in Middlesex County, Massachusetts. Bus Air's principal place of business is located in Wise County, Texas.

### Jurisdiction & Venue

4.      This Court has jurisdiction over the subject matter of the Woods Parties' Counterclaims pursuant to at least 28 U.S.C. §§ 1332(a), 1367, 2201, and 2202. Bus Air has subjected itself

to personal jurisdiction in this Court by suing the Woods Parties in the Court. Bus Air has consented to venue in this Court by asserting claims against the Woods Parties in this Court.[1]

**Facts**

1.  **The APA and the Earnout.**

5.      The Woods Parties and Bus Air entered into, among other contracts, an Asset Purchase Agreement ("APA") dated as of September 25, 2017.[2] Pursuant to the APA, the Woods Parties, as sellers, conveyed their business in the automotive air conditioning field to Bus Air, as buyer. As an "integral part" of the APA, Woods, following the acquisition, was to be employed by Bus Air as its President and CEO and continue to run the business.[3]

6.      The purchase price for the Acquired Assets was $18,190,000, plus an earnout payment, if any, of up to an additional $2,000,000, resulting in an aggregate Purchase Price of up to $20,190,000. APA at ¶ 3.1.

7.      Section 3.1 of the APA provides that E3Rivers shall be entitled to the Earnout, capped at $2 million, based on a formula that considers Bus Air's EBITDA for the calendar year ending December 31, 2018. Under § 3.1, the Earnout is calculated as 5.7 times the difference between Bus Air's EBITDA for calendar year 2018 (capped at $3.54 million) and $3.189 million. Section 3.1 further provides that Bus Air's 2018 EBITDA was to be calculated on the same basis

---

[1]     Nothing in this Counterclaim should be construed as a waiver of the Woods Parties' objections to jurisdiction or venue in this Court. The Woods Parties reserve all rights.

[2]     A true and correct copy of the APA (excluding schedules and attachments) is attached as **Exhibit A**. Capitalized terms used in this Counterclaim without definition have the same meanings given in the APA.

[3]     APA § 10.9. A true and correct copy of Woods' Employment Agreement is attached as **Exhibit B**.

as the $3.54 million EBITDA outside auditor RSM calculated in its May 11, 2017 Quality of Earnings Report.

### 1.1. Bus Air fails to provide the Woods Parties its calculation of the Earnout or an opportunity to review its records to challenge its proposed $0 Earnout.

8. Pursuant to § 3.1 of the APA, Bus Air was required to provide the Woods Parties a calculation of the Earnout payment based on its audited financial statements, and in turn, provide the Woods Parties an opportunity to review records to verify or challenge the calculation.

9. Bus Air's compliance with § 3.1 of the APA was a condition precedent to any obligation of the Woods Parties to challenge or dispute Bus Air's proposed Earnout calculation under §§ 3.1 or 3.2(e).

10. To date, Bus Air has failed and refused to provide the Woods Parties its full audited financial statements for calendar year ending December 31, 2018, its calculation of Bus Air's 2018 EBITDA, or the underlying and necessary records to verify or challenge Bus Air's Earnout calculation. Bus Air has thus waived any rights it had to contest payment of the full $2 million Earnout to the Woods Parties and is estopped from arguing to the contrary. Any assertion that Bus Air has no obligation to pay the Earnout is null and void. Bus Air owes the full $2 million Earnout to the Woods Parties.

11. Bus Air contends the Woods Parties are not entitled to any Earnout amount. Bus Air did not inform the Woods Parties of this position within a reasonable time.

12. The Woods Parties are prejudiced by Bus Air's failure to comply with Earnout provisions. The Woods Parties have not had the ability to verify or challenge any EBITDA calculations made by Bus Air. Assuming Bus Air has the information necessary to calculate the proper Earnout,

as required by the APA, its failure to provide such information to the Woods Parties is an abuse of its position and any discretion it has.

13.     Without providing the information and records necessary to verify or challenge the Earnout calculation, the Woods Parties are unable to determine whether they are entitled to a full or partial payment of the Earnout.

14.     The Woods Parties' rights to review the records and information and to verify or challenge the EBITDA calculation has not commenced due to Bus Air's failure to comply with § 3.1.

### 1.2.    Bus Air terminates Woods in June 2018 in an attempt to prevent the Woods Parties from receiving the maximum Earnout.

15.     In June 2018, without any advance notice, Bus Air terminated Woods' employment with Bus Air via a Saturday morning email. Bus Air's stated reason for termination was "due to the elimination of [Woods'] position."

16.     Even if Bus Air had not waived its right to contest payment of the full Earnout, by terminating Woods, Bus Air prevented or frustrated the Woods Parties from receiving the proper Earnout amount. By Bus Air's own belief, Woods was "instrumental" in scaling E3Rivers and had excellent relationships with key customers, accounting for over 90% of Bus Air's business. D.I. 1-1 at ¶ 4.

17.     Removing Woods from his position as President and CEO of Bus Air in the middle of 2018 prohibited the Woods Parties from being consulted on operational, strategic, personnel, or other business decisions, and from having any further impact on Bus Air's 2018 EBITDA, thus causing the 2018 EBITDA used to calculate the Earnout to be lower than it otherwise would have been had Woods remained in his position as President and CEO of Bus Air.

18. On information and belief, Bus Air terminated Woods in an effort to prevent him from having access to Bus Air's financial and other information necessary to calculate the true 2018 EBITDA.

19. On information and belief, Bus Air terminated Woods in an attempt to insulate Bus Air from Woods discovering or further learning of Bus Air's improper efforts to lower its 2018 EBITDA through at least directing business to its affiliate or parent companies, like ProAir, that otherwise should be Bus Air business, thus artificially reducing Bus Air's EBITDA and increasing the EBITDA of companies with the same or similar ownership.

20. During 2018, Bus Air intentionally directed and diverted business that should or would otherwise have been Bus Air business to its affiliate or parent companies, thus causing Bus Air's 2018 EBITDA to be artificially lower than it otherwise would have been.

21. On information and belief, Bus Air calculated its 2018 EBITDA for purposes of the formula in § 3.1 and Earnout using methodologies inconsistent with those required under the APA, such as cash basis accounting.

22. Even despite Bus Air's actions and inactions as described above, on information and belief, Bus Air's 2018 EBITDA, as correctly calculated under the formula in the APA, was large enough that the Wood Parties are nonetheless entitled to the $2 million maximum Earnout.

**2. The APA and the Net Working Capital adjustment.**

23. Under § 3.2 of the APA, the $20,190,000 Purchase Price is subject to adjustment up or down depending on estimated and actual (or final) net working capital as of the September 25, 2017 Closing Date, based on a target net working capital of $1,525,000. Specifically, at closing

the Purchase Price was subject to initial adjustment based on E3Rivers' good-faith calculation of estimated net working capital, which was to be reasonably acceptable to Bus Air.

24.     Under § 3.2 of the APA, the Purchase Price was to be re-adjusted (the final adjustment) based on the actual net working capital amount at closing. Specifically, § 3.2 provides that if the Purchase Price as adjusted by the actual net working capital amount exceeds the Purchase Price as adjusted by the initial adjustment, then Bus Air must pay E3Rivers the difference. If, on the other hand, the Purchase Price as adjusted by the final net working capital amount is less than the Purchase Price as adjusted by the initial adjustment, then Bus Air could recover the shortfall from the $2,019,000 Holdback Amount, or if necessary, from the Woods Parties. APA § 3.1(a).

25.     As a prerequisite to determining the final adjustment amount, § 3.2 provides that Bus Air "shall prepare and deliver" to E3Rivers its calculation of the actual closing net working capital and proposed adjustment to the Purchase Price "[w]ithin ninety (90) days after the Closing Date." APA § 3.2(d), (e).

26.     The actual net working capital was to be prepared in accordance with GAAP and in the same manner as the target net working capital. Section 3.2(d) also provides that Bus Air shall make its schedules and calculations used to prepare the final net working capital available to E3Rivers and its accountants for review.

27.     Bus Air's compliance with § 3.2(d)'s 90-day deadline to provide its proposed actual adjustment to the Purchase Price, including its calculations and schedules of actual net working capital, was a condition precedent to any obligation of the Woods Parties to pay a net working capital adjustment to the Purchase Price (from the Holdback Amount or otherwise), or to challenge or dispute Bus Air's proposed final net working capital adjustment under § 3.2(e).

28.     Bus Air failed to provide its proposed actual adjustment to the Purchase Price, its calculation of the final net working capital, or any related schedules or calculations, within the 90-day deadline imposed by § 3.2 of the APA. Bus Air therefore forfeited any rights it would have to receive any payment as a final adjustment to the Purchase Price based on net working capital, and the Woods Parties' obligation, if any, to review relevant calculations and records to verify or challenge the net working capital adjustment has not commenced.

29.     On or about March 7, 2018—i.e., over 5 months after closing—Bus Air provided the Woods Parties its proposed adjustment, reflecting that the Woods Parties owed Bus Air an adjustment of $435,000. Bus Air refused to provide the Woods Parties with the proper information and records to verify or challenge its dilatory proposed adjustment.

30.     The Woods Parties were prejudiced by Bus Air's failure to comply with Net Working Capital provisions. The Woods Parties have not had the ability to verify or challenge the proposed adjustment. Assuming Bus Air has the information necessary to calculate the proper net working capital adjustment, as required by the APA, its failure to provide such information to the Woods Parties is an abuse of its position and any discretion it has. Bus Air forfeited any rights it would have to receive a net working capital adjustment.

31.     In the alternative, without providing the information and records necessary to verify or challenge the final net working capital calculation, the Woods Parties are unable to determine the proper actual net working capital amount.

32.     Bus Air is in possession of $500,000 of the Holdback Amount, which is owed to the Woods Parties.

### 3.    The APA and indemnification for third-party product warranty claims.

33.    Section 8.1 of the APA provides that the Woods Parties will indemnify Bus Air from any Losses sustained as a result of third-party product warranty claims in excess of $340,000 that result from or are related to Business conducted by E3Rivers prior to Closing.

34.    As a prerequisite and condition precedent to indemnification, Bus Air was required to "promptly give written notice" to the Woods Parties of any third-party product warranty claims it was notified of.

35.    Bus Air failed to give the Woods Parties notice of any kind of any third-party product warranty claims submitted prior to Closing until at least a year after Closing, and after it had allegedly paid the claims. Even then, only a handful of "example" warranty claims were provided, and they lacked sufficient underlying documentation and information to verify or challenge them, and even lacked evidence that the warranty claims were paid by Bus Air.

36.    Bus Air's failure to promptly provide the Woods Parties written notice of each third-party product warranty claim actually and materially prejudiced the Woods Parties at least in that they were prevented from inspecting, verifying, challenging, or otherwise defending against the submitted warranty claims, including determining whether the claims should be fully or partially paid, or whether an alternative or less expensive fix was available. This resulted in the amount of third-party warranty claims being artificially higher than it would have been had Bus Air provided prompt written notice to the Woods Parties.

37.    Bus Air's compliance with § 8.5(a)'s "prompt" written notice requirement was a condition precedent to any obligation of the Woods Parties to indemnify Bus Air for third-party

claims. By failing to promptly provide written notice of the third-party warranty claims, Bus Air forfeited any rights it would have to receive any indemnification for the warranty claims.

38.     Bus Air's failure to provide such information promptly to the Woods Parties is also an abuse of Bus Air's position and any discretion it has.

39.     Bus Air is in possession of $500,000 of the Holdback Amount, which is owed to the Woods Parties.

<u>**Causes of Action**</u>

**Count 1 – Breach of the APA**

40.     The Woods Parties incorporate by reference the preceding paragraphs of this Counterclaim.

41.     The APA is a valid and existing contract between the parties.

42.     As explained more fully above, Bus Air breached numerous obligations imposed by the APA. Bus Air materially breached the APA at least by: (a) failing to provide its calculation of Bus Air's 2018 calendar year EBITDA and Earnout calculation, including its audited financial statements; (b) failing to provide the Woods Parties an opportunity to review the relevant records to verify or challenge Bus Air's calculation; (c) failing to provide EBITDA and Earnout information and records within a reasonable time; (d) refusing, without justification, to pay the Woods Parties any Earnout; (e) terminating Woods' employment with Bus Air in June 2018 and diverting Bus Air business in 2018 from Bus Air to its affiliate and/or parent companies, artificially lowering its 2018 EBITDA used to calculate the Earnout; (f) using methodologies inconsistent with those required under the APA in calculating its proposed $0 Earnout; (g) failing to provide its calculation of the final net working capital and proposed adjustment to the Purchase Price within 90 days after closing; (h) failing to provide its schedules, calculations, and other information and records used

to prepare its proposed final net working capital or a reasonable opportunity to review its calculations; and (i) failing to provide prompt written notice of third-party product warranty claims submitted prior to closing, resulting in artificially higher payments on warranty claims.

43. These failures constitute material breaches of the APA.

44. The Woods Parties have been damaged as a result of Bus Air's material breaches of the APA.

### Count 2 – Breach of the Implied Covenant of Good Faith and Fair Dealing

45. The Woods Parties incorporate by reference the preceding paragraphs of this Counterclaim.

46. As more fully described above, Bus Air affirmatively took actions and/or failed to take actions with respect to the Earnout that prevented or negatively affected the Woods Parties' ability to receive the maximum Earnout, including at least its failure to provide its EBITDA calculations and audited financials, its termination of Woods in mid-2018, its diverting of business to other entities within its control, and its use of improper methodologies to calculate its proposed Earnout amount. Bus Air's conduct was arbitrary and unreasonable.

47. As more fully described above, Bus Air affirmatively took actions and/or failed to take actions with respect to the final net working capital adjustment that prevented or negatively affected the Woods Parties' ability to receive the proper adjustment, including at least its failure to provide its calculations within 90 days of closing, its failure to provide its schedules and records used to calculate the adjustment, and its failure to provide the Woods Parties an opportunity to review this information. Bus Air's conduct was arbitrary and unreasonable.

48. As more fully described above, Bus Air affirmatively took actions and/or failed to take actions with respect to the third-party product warranty claims that prevented or negatively

affected the Woods Parties' ability to reduce or eliminate the claims paid, including at least its failure to provide prompt written notice of the claims submitted prior to closing. Bus Air's conduct was arbitrary and unreasonable.

49.     By engaging in the arbitrary and unreasonable conduct described above, Bus Air took advantage of its position of control and abused its discretion.

50.     Bus Air's arbitrary and unreasonable conduct frustrated the overarching purpose of the APA.

51.     Bus Air's arbitrary and unreasonable conduct had the effect of preventing the Woods Parties from receiving the maximum Earnout, the minimum product warranty claims paid, and the proper net working capital adjustment.

## Count 3 – Declaratory Judgment

52.     The Woods Parties incorporate by reference the preceding paragraphs of this Counterclaim.

53.     The Woods Parties seek declaratory relief from the Court.

54.     A dispute exists between the Woods Parties and Bus Air concerning the parties' respective rights and obligations under the APA.

55.     There exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

56.     There is an actual, justiciable controversy as to whether Bus Air is obligated to pay the Woods Parties the $2 million Earnout under the APA as a result of Bus Air's failure to provide the Woods Parties its audited financial statements and EBITDA calculations for calendar year ending December 31, 2018 within a reasonable time, or at all.

57.     There is an actual, justiciable controversy as to whether Bus Air is obligated to pay the Woods Parties the $500,000 it is in possession of from the Holdback Amount a result of Bus Air's forfeiture of any right to an adjustment of net working capital in its favor or to reimbursement for any third-party product warranty claims.

58.     The facts are sufficiently established such than an actual and live controversy exists between the parties and it is ripe for adjudication.

59.     The declaration by the Court will terminate the controversy as to the Earnout, net working capital, and warranty claims, and remove uncertainty as to the legal rights and obligations between the parties.

60.     The Woods Parties submit that the Court should exercise its power and issue an order declaring that Bus Air is obligated to pay the Woods Parties a $2 million Earnout and at least return the $500,000 in its possession from the Holdback Amount to the Woods Parties.

61.     All conditions precedent for the relief prayed for in this count have been fulfilled.

### Count 4 – Indemnification

62.     The Woods Parties incorporate by reference the preceding paragraphs of this Counterclaim.

63.     Section 8.2(a) of the APA requires Bus Air to indemnify the Woods Parties "from, against and in respect of any and all [l]osses which any [Woods Parties] may suffer, sustain or become subject to as a result of, arising out of or directly or indirectly relating to . . ." among other things: (i) any actions, suits, proceedings, investigations or other claims related to Bus Air that are based upon fact and circumstances arising prior to the closing on September 25, 2017; and (ii) Bus Air's use of the assets it acquired in the operation of the acquired business after the closing on September 25, 2017.

64. Section 8.2(a) thus requires Bus Air to indemnify the Woods Parties against any and all losses related to the matters described in greater detail in Paragraph 42 of this Counterclaim.

## Demand for Jury Trial

65. The Woods Parties demand a trial by jury.

## Prayer for Relief

The Woods Parties pray that the Court enter judgment awarding them the following relief from Bus Air:

A. Actual damages;

B. Attorneys' fees and expenses;

C. Costs;

D. Pre- and post-judgment interest;

E. An order declaring that Bus Air is obligated to pay the Woods Parties $2.5 million; and

F. All other relief the Woods Parties are entitled to.

April 29, 2020

Respectfully submitted,

**FARNAN LLP**

/s/ *Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, Delaware 19801
(302) 777-0300 | main
(302) 777-0301 | fax
bfarnan@farnanlaw.com

mfarnan@farnanlaw.com

-and-

Casey Griffith (admitted *pro hac vice*)
Michael Barbee (admitted *pro hac vice*)
Maeghan Whitehead (admitted *pro hac vice*)
Dallas Flick (admitted *pro hac vice*)
**Griffith Barbee PLLC**
One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax
casey.griffith@griffithbarbee.com
michael.barbee@griffithbarbee.com
maeghan.whitehead@griffithbarbee.com
dallas.flick@griffithbarbee.com

*Attorneys for Defendants*